THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ANTHONY DUFFY, Appellant.

Second Department, April 22, 1974.

*Kadane & Spizz* (*Harvey W. Spizz, Marilyn Sloane* and *Perry S. Reich* [*legal intern*] of counsel), for appellant.

*William Cahn, District Attorney* (*Calvin E. Rafuse, Jr.,* of counsel), for respondent.

SHAPIRO, J. The defendant, who has been convicted of robbery in the third degree and grand larceny in the third degree, complains that the trial court committed reversible error in denying his pretrial motion to prohibit the District Attorney from questioning him about any prior convictions or as to the commission by him of specific prior criminal or immoral acts. That is the principal issue to be determined in this case.

The operative facts in the record leading to the defendant's conviction may be simply stated. The complainant testified, in essence, that he asked two men, including the defendant, to help get his automobile started. They were unsuccessful. When the other man left, the defendant grabbed the complainant with his right hand, kept his left hand in his pocket simulating a weapon and demanded money. He took all the money the complainant had ($5 in bills and some change). He was immediately apprehended and the money was found on his person.

The defendant took the stand and testified that he had merely asked for some money as payment for having assisted the complainant, although he admitted that he left the complainant without having succeeded in starting his car.

Prior to the trial the defendant moved to restrain the prosecutor from cross-examining him for impeachment purposes — if he were to take the witness stand — with respect to the underlying facts of two prior youthful offender adjudications. Although the prosecutor could not ask the defendant about those adjudications, because they were not criminal convictions (CPL 720.35, subd. 1), he could, under existing case law, have questioned the defendant about the underlying facts, in order to impeach his credibility (*People* v. *Vidal*, 26 N Y 2d 249; *People* v. *Geller*, 27 A D 2d 843). In support of his motion, the defendant argued, in essence, that the proof of his prior acts of violence (assaults, resisting arrest, harassment) had little bearing on the issue of his veracity and credibility and that by permitting the prosecutor to question him on those points the prosecutor could paint a picture of "professional criminality" (*People* v. *Zackowitz*, 254 N. Y. 192, 198), courting the danger that the jury would give more weight to the defendant's past conduct in arriving at a judgment of conviction than it would give to the evidence in chief. To guard against this danger, the defendant suggested that the court determine, prior to the trial, that the prosecutor be barred from using the facts underlying his youthful offender adjudications to impeach his credibility if he chose to take the witness stand on his own behalf.

The motion was denied on the ground that "as long as the questions are asked in good faith, the district attorney may question the defendant concerning his prior criminal record."

During cross-examination the defendant, over objection, was asked whether he had punched a police officer on May 29, 1970. He denied any such occurrence. He was then shown a document and asked whether it refreshed his recollection of the events of May 29, 1970. His denial remained unaffected.

Questioning with regard to the date of December 23, 1971 led to an admission by the defendant that on that day he had an incident with an individual named Samuel Brown, but he denied that he resisted an attempt to place him under arrest.

The long-recognized New York rule has been that a defendant may not only be cross-examined as to any criminal convictions but also as to his commission of any vicious or criminal acts, so long as the questions are asked in good faith, i.e., with some reasonable basis in fact for putting them. However, recognition has also been afforded to the corollary principle that the scope of such cross-examination rests in the sound discretion of the trial court (*People* v. *Sorge,* 301 N. Y. 198; *People* v. *Webster,* 139 N. Y. 73).

The statute (CPL 60.40, subd. 1) governing the use of prior convictions to impeach a defendant who has taken the stand is a permissive one (see the Practice Commentary by Professor Richard G. Denzer on CPL 60.40 in McKinney's Cons. Laws of N. Y., Book 11A, pp. 255–256). The statute (subd. 1) reads: "If in the course of a criminal proceeding, any witness, including a defendant, is properly asked whether he was previously convicted of a specified offense and answers in the negative or in an equivocal manner, the party adverse to the one who called him may independently prove such conviction. If in response to proper inquiry whether he has ever been convicted of any offense the witness answers in the negative or in an equivocal manner, the adverse party may independently prove any previous conviction of the witness." The statute thus prescribes the procedure if a witness, including a defendant, "is properly asked whether he was previously convicted of a specified offense," but it does not answer the substantive question of whether a prosecutor may, under some circumstances, be precluded from making that "proper" inquiry.

Although courts at nisi prius have arrived at differing conclusions as to the power of a court to prohibit cross-examination of a defendant as to prior convictions, or, as in this case, as to prior criminal or immoral acts,[1] I have been unable to find any decision in New York on the appellate level which has considered that issue.

---

1. Cf., e.g., *People* v. *Wilson* (75 Misc 2d 471); *People* v. *King* (72 Misc 2d 540); *People* v. *Pritchett* (69 Misc 2d 67); *People* v. *Palmeri* (58 Misc 2d 288). In *People* v. *Zabrocky* (26 N Y 2d 530, 535) the Court of Appeals held that it was not error "for the court to rule, prior to trial, that if appellants should testify they could be impeached by introducing evidence of prior convictions" but there appears to be no appellate decision holding that the trial court may or should grant such an application. (See, also, *People* v. *Reynolds,* 31 N Y 2d 723.)

In *Luck* v. *United States* (348 F. 2d 763 [D. C. Cir.]), the court construed the effect of section 305 of title 14 of the District of Columbia Code. That statute, as does ours (CPL 60.40), permitted, but did not require, the impeachment of a defendant who had taken the stand with reference to prior juvenile convictions. Said the court (pp. 768–769):

"The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweights the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field.

" In exercising discretion in this respect, a number of factors might be relevant, such as the nature of the prior crimes, the length of the criminal record, the age and circumstances of the defendant, and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. The goal of a criminal trial is the disposition of the charge in accordance with the truth. The possibility of a rehearsal of the defendant's criminal record in a given case, especially if it means that the jury will be left without one version of the truth, may or may not contribute to that objective. The experienced trial judge has a sensitivity in this regard which normally can be relied upon to strike a reasonable balance between the interests of the defendant and of the public. We think Congress has left room for that discretion to operate."

In *Gordon* v. *United States* (383 F. 2d 936 [D. C. Cir.]), Judge (now Chief Justice) BURGER expanded the effect to be given the *Luck* decision. He agreed that proof of a prior conviction may have a genuine probative value on the issue of credibility, but felt that because of the ever present possibility of undue prejudice its receipt should be discretionary. His decision contemplated an on-the-record consideration by the Trial Judge, with the burden resting upon the defendant to demonstrate to the trial court sufficient reason to withhold past convictions from the jury. Such proof, he held, should be barred only if its prejudicial effect far outweighed its probative relevance.

Judge BURGER, in laying down the general guidelines to be followed, then said (pp. 940–941):

"In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not; traffic violations, however serious, are in the same category. The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness.

"A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity.

"Of course, there are many other factors that may be relevant in deciding whether or not to exclude prior convictions in a particular case. *See Luck, supra* at 157, 348 F. 2d at 769. One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment. *Ibid.; see also Brown, supra* [referring to *Brown* v. *United States,* 370 F. 2d 242].

"We recognize the undesirability of prolonging the trial unduly when the court is already confronted with requirements

which work to that end, but in many cases the best way for the District Judge to evaluate the situation is to have the accused take the stand in a non-jury hearing and elicit his testimony and allow cross examination before resolving the *Luck* issue. Not only the trial judge, but both counsel, would then be in a better position to make decisions concerning the impeachment issue. Of course, the defendant could not be compelled to give testimony in the non-jury hearing and his testimony taken at the non-jury hearing would not be admissible in evidence except for impeachment. See Woody v. United States, 126 U. S. App. D. C.—, 379 F. 2d 130 (1967); compare Walder v. United States, 347 U. S. 62, 65, 74 S. Ct. 354, 98 L. Ed. 503 (1954).''

In *United States* v. *Palumbo* (401 F. 2d 270, 273 [2d Cir.]), in rejecting the contention that a Judge has no discretion to bar the use of prior convictions to impeach a defendant who has elected to testify, the court said: '' In short, we hold that a trial judge may prevent such use, if he finds that a prior conviction negates credibility only slightly but creates a substantial chance of unfair prejudice, taking into account such factors as the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of the jurors improperly.''

The Second Circuit reiterated that view in *United States* v. *Puco* (453 F. 2d 539, 542), in which it noted that '' reference to a defendant's criminal record is always highly prejudicial '' and that '' the potential for prejudice, moreover, is greatly enhanced where, as here, the prior offense is similar to the one for which the defendant is on trial.'' In *Puco* it was held that the trial court had abused its discretion in allowing the defendant to be questioned about a 21-year-old narcotics conviction. The appellate court found that, on balance, the evidence of the conviction negated credibility only slightly and created a substantial risk of unfair prejudice.

In *People* v. *Moore* (42 A D 2d 268, 272–273), in dealing with the same subject, we said: '' It is, of course, permissible to cross-examine a defendant regarding any previous vicious or criminal acts he has committed, which may have a bearing on his credibility (*People* v. *Sorge*, 301 N. Y. 198; *People* v. *Schwartzman*, 24 N Y 2d 241; *People* v. *Webster*, 139 N. Y. 73). However, without attempting to minimize the seriousness of any act of vandalism, it must be borne in mind that the defendant was only 12 years old at the time. It thus had little, if any, value as a barometer of the defendant's character or trustworthiness and even less value as an indicator of moral turpitude. In short, it was not, under the circumstances, an act which evidenced ' some fair tendency to show moral turpitude '

(*People* v. *Montlake*, 184 App. Div. 578, 583). Therefore, the contention impliedly urged upon the jury in summation that because of the commission of this lone past act the defendant was of a criminal bent or character was seriously prejudicial to his rights and, in a case as factually close as this one, might have been the straw that turned the jury against the defendant (cf. *People* v. *Moore*, 20 A D 2d 817). *The probative value of the act of vandalism was so far outweighed by its prejudicial effect that it should not have been placed before the jury for its consideration* " (emphasis supplied).

In view of the permissive wording of the New York statute, and the recognized rule that the extent of allowable cross-examination as to prior convictions or the commission of vicious or immoral acts rests in the sound discretion of the trial court, there is room for the adoption of a rule of balancing to be applied as justice may dictate. On appropriate application, made either at or prior to trial, and in the exercise of a sound discretion, the trial court should determine whether an applying defendant has sustained the burden, which should be his, of demonstrating that the prejudice involved in permitting into evidence proof of prior convictions or criminal acts so far outweighs the probative value of such proof for impeachment purposes that the proof should not be received. Hence, we today announce that to be the applicable law. By reason of varying circumstances of each case, its utilization, by its very nature, will depend upon an *ad hoc* application.[2] While we deplore the ever increasing proliferation of pretrial procedures, we do not feel that the hearings in such cases, if found to be required, will necessitate any extended procedures, for in most cases the issue can be determined by an oral statement of counsel on the record.

The judicial enunciation of such a rule of law is not one of constitutional dimension. The requirements of due process are not violated by putting a defendant to a choice as to whether

---

2. As Judge BURGER aptly said in *Gordon* v. *United States* (383 F. 2d 936, 941, *supra*): " We are well aware that these are not firm guidelines which can be applied readily as though they were part of the structure of the Federal Rules of Criminal Procedure; the very nature of judicial discretion precludes rigid standards for its exercise; we seek to give some assistance to the trial judge to whom we have assigned the extremely difficult task of weighing and balancing these elusive concepts. Surely, it would be much simpler if prior convictions of an accused were totally admissible or totally excludable as impeachment; but in the face of an explicit, unambiguous statute allowing use of prior convictions and the holding in *Luck* we have little choice. The lesser step has been taken in *Luck* saying that the statute is to be read as permitting a discretion in the trial judge."

to testify, knowing that the fact of prior convictions may be admitted against him with appropriate limiting instructions (cf. *People* v. *Felder*, 39 A D 2d 373, affd. 32 N Y 2d 747, app. dsmd. *sub nom. Felder* v. *New York*, 414 U. S. 948; *Spencer* v. *Texas*, 385 U. S. 554, rehearing den. 386 U. S. 969; *McMann* v. *Richardson*, 397 U. S. 759; *Brown* v. *Walker*, 161 U. S. 591).

Other jurisdictions which have considered the question have concluded, in line with our determination here, that the rule permitting the introduction of prior convictions is permissive and subject to an appropriate balancing of their prejudicial effect as against their probative value (see, e.g., *Commonwealth of Pennsylvania* v. *Bighum*, 452 Pa. 554; *People* v. *Montgomery*, 47 Ill. 2d 510; *People* v. *Meadows*, 46 Mich. App. 741; *People* v. *Beagle*, 6 Cal. 3d 441; *Burgess* v. *State of Maryland*, 161 Md. 162).[3]

Having come to the conclusion that the court below had the power to bar the District Attorney from proving the defendant's prior criminal or immoral acts (although, apparently, the County Judge did not think so), we are not persuaded that the defendant sustained his burden of establishing that the proof thus offered against him should have been excluded, as he has not demonstrated any great degree of prejudice by the severely limited extent to which the prosecutor was permitted to question him with regard to the facts underlying his previous youthful offender convictions.[4] Insofar as the procedure here outlined is concerned, we see no distinction between proof of prior convictions and proof of prior specific criminal or immoral acts. The admissibility of such proof should be governed by the general guidelines referred to in this opinion.

---

3. For the sake of clarity, although the question is not before us, we express the view that this balancing concept should not extend to witnesses other than the defendant, since they do not stand to lose their liberty if the jury disbelieves their testimony. (See discussion in *People* v. *Meadows*, 46 Mich. App. 741.)

4. The ultimate task facing the jury in this case was to assess the credibility of the complainant as against that of the defendant. In this regard Judge BURGER noted in *Gordon* v. *United States* (383 F. 2d 936, 941, *supra*): "Even though we need not go beyond Appellant's failure to raise the issue he now relies on, we note that the admission of Appellant's criminal record here, along with the criminal record of the complaining witness, was not in a vindictive or 'eye for an eye' sense, as Appellant argues. Rather it was received because the case had narrowed to the credibility of two persons — the accused and his accuser — and in those circumstances there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed."

We have considered the defendant's remaining contentions and find them to be without merit. Accordingly, the judgment of conviction should be affirmed.

Hopkins, Acting P. J., Christ, Brennan and Munder, JJ., concur.

Judgment of the County Court, Nassau County, rendered July 3, 1973, affirmed.